IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| DAVID BROEDERDORF | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ROBERT BACHELER | : | NO. 15-2117 |

MEMORANDUM

Dalzell, J.                                                    September 14, 2015

## I.  **Introduction**

We consider here the motion under Fed. R. Civ. P. 12(b)(6) of defendant Robert Bacheler ("Bacheler") to dismiss plaintiff's complaint for failure to state a claim upon which relief can be granted.

David Broederdorf ("Broederdorf") brings this action as personal representative on behalf of the Estate of Amy Louise Bosich, his late wife (a citizen of Florida as is her husband),  against defendant Bacheler, a Pennsylvania citizen, claiming breach of contract, breach of the implied covenant of good faith and fair dealing, equitable estoppel, unjust enrichment, fraud in the inducement, breach of fiduciary duty, and conversion.

We have diversity jurisdiction over these claims pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds the jurisdictional threshold.

Defendant moves to dismiss plaintiff's complaint in its entirety.  For the reasons set forth below, we will grant in part and deny in part defendant's motion to dismiss and grant leave for plaintiff to file an amended complaint.

**II.**     <u>**Standard of Review**</u>

A defendant moving to dismiss under Fed R. Civ. P. 12(b)(6) bears the burden of proving that the plaintiff has failed to state a claim for relief. <u>See</u> Fed. R. Civ. P. 12(b)(6); <u>see also</u>, <u>e.g.</u>, <u>Hedges v. United States</u>, 404 F.3d 744, 750 (3d Cir. 2005).  To survive a Rule 12(b)(6) motion, the complaint must contain sufficient factual matter, accepted as true, to state a facially plausible claim to relief.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009); <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678.

As the Supreme Court stresses, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action…do not suffice." <u>Id.</u>  Courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  <u>Twombly</u>, 550 U.S. at 555.  The Court further notes that analyzing claims is a "context-specific task" that requires judges to use their "judicial experience and common sense" when ultimately deciding whether or not a plaintiff has pled sufficient factual content to plausibly state a claim for relief.  <u>Iqbal</u>, 556 U.S. at 679.

In the wake of <u>Twombly</u> and <u>Iqbal</u>, our Court of Appeals laid out a two-part test to apply when considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6):

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations omitted). In deciding a motion to dismiss, we may consider "the allegations contained in the complaint,

exhibits attached to the complaint and matters of public record," and any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefits Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

We recite the facts as they appear in the complaint.

**III.      Factual Background**

Plaintiff Broederdorf is the personal representative of the Estate of Amy Louise Bosich ("Estate") as appointed by the Circuit Court for Flagler County, Florida, where Bosich's Will is being probated. Compl. at ¶ 13.  Bosich was the founder and sole owner of Flying Nurses International (FNI), a medical escort service that specializes in commercial airline medical transports and supplies nurses to escort travelers who have fallen ill or suffered injury while travelling abroad.  Id. at  ¶¶ 19-20.  Defendant Bacheler is and has been an employee of FNI since 2007 and has worked as a Flight Nurse and International Flight Coordinator.  Id. at ¶ 21.

The original Company Agreement for FNI ("Original Agreement") was drafted in September of 2011.  See Compl. Ex. A.  The Original Agreement gave Bacheler a right of first refusal to purchase FNI upon the death of Bosich.  See id. at Sec. 14.02.  It also provided for Bacheler to purchase a life insurance policy on Bosich as a means of paying for the purchase of FNI:

> A life insurance policy in an amount to be determined in the Sole Member's sole and absolute discretion may be initiated within sixty (60) days of the adoption of this Company Agreement.  This life insurance policy shall be payable to the Sole Member's estate as all or a portion of the purchasing funds required for Mr. Bacheler to purchase the Sole Member's membership interests in the Company.  In order to use the life insurance policy to cover all or a portion of the purchase price for the Sole Member's membership interests, Robert Bacheler shall pay any and all

3

> premiums due on such policy during its term. In the event that Robert Bacheler waives his right of first refusal and another buyer is found to purchase the Sole Member's membership interests in the Company, Robert Bacheler shall be reimbursed for the premium payments made for such life insurance policy.

Id. at Sec. 14.02(c)(4). Bacheler signed a "Joinder and Consent" page on September 7, 2011 at the end of the Original Agreement which read:

> In light of the importance of the specified parties' cooperation in implementation of the succession plan set forth in Article 14 of this Company Agreement to ensure the continuous operation of the Company and transfer of the Sole Member's membership interest in the Company the undersigned hereby join in and consent to the provisions of this Company Agreement. Such joinder and consent shall not be [sic] affect the powers of the Sole Member nor restrict the Sole Member from modifying the terms of this Company Agreement in her sole and absolute discretion.

Id. at "Joinder and Consent." Bosich signed the Original Agreement at its conclusion as both a "Manager" and "Member." Id.

Bosich applied for a life insurance policy in the amount of $1 million, pursuant to the Original Agreement, on April 20, 2012. See Compl. Ex. B. In applying for the policy, Bosich designated "Amy Bosich's Estate" as the primary beneficiary of the policy in accordance with the Original Agreement. Id. Broederdorf was designated the contingent beneficiary of the life insurance policy. Id. Bosich named Bacheler the owner of the policy. Id. The $1 million insurance policy on the life of Bosich was issued shortly thereafter. Bacheler paid the advance premium for the described life insurance policy and timely made all subsequent premium payments for the policy. Compl. at ¶¶ 31, 36.

FNI replaced the Original Agreement with an Amended and Restated Company Agreement ("Amended Agreement") in September of 2014. See Compl. Ex. C. The Amended Agreement also gave Bacheler a right of first refusal to purchase the company in the event of

4

Bosich's death and again addressed the issue of Bacheler using the life insurance policy on

Bosich to help Bacheler purchase the company:

> A life insurance policy has been put in place, which is payable to the Sole Member's estate as all or a portion of the purchasing funds required for Robert Bacheler to purchase the Sole Member's membership interests in the Company.  In order to use the life insurance policy to cover all or a portion of the purchase price for the Sole Member's membership interests, Robert Bacheler has been and will continue to pay all of the premiums due on the life insurance policy.  In the event that Robert Bacheler waives his right of first refusal and another buyer is found to purchase the Sole Member's membership interest in the Company, he shall be reimbursed for the premium payments actually paid at the time of the sale of the Company to the third party purchaser…Robert Bacheler shall receive a credit towards the Fair Value of the Company up to one hundred percent (100%) of the proceeds received from the life insurance policy but, in no event, will Robert Bacheler be entitled to receive any portion of the life insurance proceeds if the Fair Value of the Company is less than the amount paid from the life insurance policy after the death of the Sole Member.

Id. at Sec. 14.02(c)(4).  Bacheler again signed a "Joinder and Consent" page on September 15,

2014 at the end of the Amended Agreement which read:

> In light of the importance of the specified parties' cooperation in implementation of the succession plan set forth in Article 14 of this Amended and Restated Company Agreement to ensure the continuous operation of the Company and transfer of the Sole Member's membership interest in the Company the undersigned hereby join in and consent to the provisions of this Amended and Restated Company Agreement.  Such joinder and consent shall not affect the powers of the Sole Member nor restrict the Sole Member from modifying the terms of this Company Agreement in her sole and absolute discretion; except that the Sole Member may not amend Section 14.02(c) and 14.04 without the written joinder and consent of Robert Bacheler.

Id. at "Joinder and Consent."  Bosich signed the Amended Agreement as both a "Manager" and

"Member" on August 26, 2014, and, on September 15, 2014, she signed the above described

"Joinder and Consent" below Bacheler's signature.  Id.

Shortly after signing the Amended Agreement, Bosich fell ill with cancer.  Compl. at ¶ 37.  On or around December 2, 2014, Bacheler unilaterally changed the named primary beneficiary of  the $1 million life insurance policy on Bosich from her Estate to himself.  Id. at ¶ 38.  Bosich was unaware that Bacheler made this change to the life insurance policy, and she did not consent to such change.  Id. at ¶ 39.  Bosich died on December 6, 2014.  See Def.'s Mem. Supp. Mot. to Dismiss, Ex. D.

Upon Bosich's death, Bacheler was given the option of purchasing FNI from the Estate pursuant to the Amended Agreement.  Compl. at ¶ 40.  Bacheler subsequently declined to purchase FNI.  Id. at ¶ 41.  Bacheler was paid the $1 million in proceeds from Bosich's life insurance policy, as he had made himself the primary beneficiary under the policy.  Id. at ¶ 42.  Bacheler refused to turn over the proceeds to the Estate and, by agreement, those funds are now being held in escrow while this litigation is pending.  See id. at ¶¶ 42-43 and Def.'s Mem. Ex. F.  Had Bosich known that Bacheler would decline to purchase FNI and attempt to keep the proceeds for his own use, she never would have permitted him to acquire an insurance policy on her life.  Id. at ¶ 49.

**IV.   Discussion**

We will separately analyze the claims brought by Broederdorf in his complaint and determine whether each one survives Bacheler's Rule 12(b)(6) motion to dismiss.  Before we analyze each claim, however, we must address the choice of law issue raised by the parties -- namely, whether Pennsylvania or Florida law applies to each claim.  After addressing this issue we will analyze Broederdorf's claims in turn.

A.     <u>Choice of Law</u>

Broederdorf states in his complaint that Florida law governs this dispute pursuant to the choice of law provision in both the Original and Amended Agreements.  Compl. at ¶ 18. Bacheler counters that Pennsylvania law should apply, citing both the choice of law provision in the Escrow Agreement governing the holding of the $1,000,000 that is the subject of this litigation and Pennsylvania choice of law principles.  Def.'s Mem. at 51-55.  Bacheler further avers that, even if the Original and Amended Agreements dictate that Florida law applies to the contract claims made by Broederdorf, it does not apply to the claims of conversion and fraud in the inducement, which are governed by tort law.  <u>Id.</u> at 56.  We find that Florida law governs the breach of contract, breach of contract-third party beneficiary, breach of the implied covenant of good faith, and fiduciary duty claims, and that Pennsylvania law governs the conversion, fraud, unjust enrichment, and equitable estoppel claims.

1.     <u>Choice of Law Provisions in Contracts</u>

Federal courts sitting in diversity apply the choice of law principles of the forum state, which in this case is Pennsylvania. See <u>Pac Employers Ins. Co. v. Global Reinsurance Corp. of America</u>, 693 F.3d 417, 432 (3d Cir. 2012).  In Pennsylvania, choice of law provisions in contracts will generally be given effect. See <u>Smith v. Commonwealth Nat. Bank</u>, 557 A.2d 775 (Pa. Super. Ct. 1989) (citing the Restatement (Second) of Conflict of Laws § 187 (1971)). Choices of law provisions, like other contract provisions, are interpreted pursuant to their sensible grammatical construction.  See <u>Synthes USA Sales, LLC v. Harrison</u>, 83 A.3d 242 (Pa. Super. Ct. 2014) (citing <u>Murphy v. Duquesne University of the Holy Ghost</u>, 777 A.2d 418 (Pa. 2001)).  A contract's choice of law provisions "do not govern tort claims between contracting

parties unless the fair import of the provision embraces all aspects of the legal relationship."

Jiffy Lube Int'l, Inc. v. Jiffy Lube of Pennsylvania, Inc., 848 F. Supp. 569, 576 (E.D. Pa 1994).

Here, the relevant choice of law provision of both the Original and Amended Agreements

reads as follows:

> **Governing Law** THIS AGREEMENT IS GOVERNED BY AND
> SHALL BE CONSTRUED IN ACCORDANCE WITH THE
> LAW OF THE STATE OF FLORIDA, EXCLUDING ANY
> CONFLICT-OF-LAWS RULE OR PRINCIPLE THAT MIGHT
> REFER THE GOVERNANCE OR THE CONSTRUCTION OF
> THIS AGREEMENT TO THE LAW OF ANOTHER
> JURISDICTION.

Compl. Ex. A (emphasis and caps in original) and Compl. Ex. C (emphasis and caps in original).

Pennsylvania law requires us to interpret a contract by making a preliminary inquiry as to

whether the contract is ambiguous and, if it is not ambiguous, interpret the contract as a matter of

law.  See Hullet v. Towers, Perrin, Forster & Crosby, Inc., 38 F.3d 107, 111 (3d Cir. 1994)

(citing Stendardo v. Federal Nat'l Mortgage Ass'n, 991 F.2d 1089, 1094 (3d Cir. 1993)).  The

wording of this provision, when translated from legalese, states that Florida substantive law shall

govern this Agreement with the only exception being that, when Florida's conflict of law

principles point toward applying another state's laws, those principles should be ignored.

This choice of law provision, therefore, governs all of the contractual claims arising from

the Agreement, but none of the tort or other non-contractual claims.[1]  Broederdorf's claims for

---

[1] Defendant contends that the choice of law provision in the Original and Amended
Agreements do not apply to him because his signing of these agreements did not create a
contract, and, alternatively, that the choice of law provision in the Escrow Agreement between
the parties dictates that Pennsylvania law should apply.  Def.'s Mem. at 52-53  These arguments
have no merit.  As we will explain, Broederdorf has pled facts sufficient to plausibly show that
the Estate and Bacheler entered into an enforceable contract when they signed the Original and
Amended Agreements.  Further, the Escrow Agreement choice of law governs only disputes
surrounding the holding of the funds in escrow.  This dispute arises out of the Original and
Amended Company Agreements.  In fact, the Escrow Agreement would not exist if not for the

breach of contract and breach of contract-third party beneficiary are governed by Florida law, as those claims arise from Bacheler's alleged breach of the contract created by the Original and Amended Agreements.  Broederdorf's claim for breach of the implied covenant of good faith is based on the parties' expectations arising from the express terms of the Original and Amended Agreements, and thus the choice of law provision applies to this claim and Florida law governs. Finally, the breach of fiduciary duty claim is covered by the choice of law provision because Bacheler's alleged fiduciary duty to Bosich arose from the Original and Amended Agreements. Therefore, Florida law also governs Broederdorf's fiduciary duty claim.

###    2.    Applying Choice of Law Principles to the Remaining Claims

Although Florida law governs Broederdorf's four claims directly related to the Original and Amended Agreements, we must separately analyze the remaining claims to determine whether Florida or Pennsylvania law applies.  See Berg Chilling Systems, Inc. v. Hull Corp., 435 F.3d 455, 462 (3d Cir. 2006) ("Because choice of law analysis is issue-specific, different states laws may apply to different issues in a single case, a principle known as "depecage" [sic].").  When no choice of law provision governs what law to apply in a dispute, Pennsylvania uses the following framework[2] in deciding which state's laws are applicable.  The first step is to determine "whether a conflict exists between the laws of competing states." Budtel Associates, LP v. Continental Cas. Co., 915 A.2d 640, 643 (Pa. Super. Ct. 2006) (citing Wilson v. Transp.

---

dispute over the Company Agreements, as the escrow account holds the funds at the center of this case.

[2] This approach has been called a "two-step analysis" by courts.  See, e.g., Hanover Ins. Co. v. Ryan, 619 F. Supp. 2d 127, 134-35 (E.D. Pa 2007) ("[I]n Pennsylvania contracts cases … the court performs a flexible, two-step interests/contacts analysis."); Atlantic Pier Assocs., LLC v. Boardakan Rest. Partners, 647 F. Supp. 2d 474, 486 (E.D. Pa 2009) ("Pennsylvania employs a two-step process to resolve choice-of-law questions.").  We believe, however, that this "two-step" label is erroneous. As our description makes clear, there are three distinct steps courts must take when analyzing choice of law problems where there is a true conflict between competing states' laws.

Ins. Co., 889 A.2d 563, 570 (Pa. Super. Ct. 2005).  If there is no conflict between the laws of

competing states, no further analysis is necessary and courts apply the law of the forum state.

See, e.g., State Farm Fire & Cas. Co. v. Holmes Products, 165 F. App'x 182, 185 (3d Cir. 2006)

(non-precedential) ("because there is no conflict between the laws of other states that may have

an interest…a court shall apply the law of the forum state."); Austin v. Dionne, 909 F. Supp.

271, 274 (E.D. Pa 1995) ("if the law of either jurisdiction may be applied without impairing the

governmental interests of the jurisdiction whose law is not being applied, no conflict exists…and

the court should apply the law of the forum.").[3]

 When there are relevant differences between the competing states' laws, courts must

examine the governmental policies underlying each law and classify the conflict as "true,"

"false," or "unprovided for."[4]  See Hammersmith v. TIG Ins. Co., 480 F.3d 220, 230 (3d Cir.

2007).  A false conflict occurs when "only one jurisdiction's governmental interests would be

impaired by the application of the other jurisdiction's law." LeJeune v. Bliss-Salem, Inc., 85 F.3d

---

[3] We find it necessary, given the muddled federal and state law on this topic in Pennsylvania, to take this opportunity to quote an excellent discussion regarding the distinction between there being "no conflict" between state laws and a "false conflict" between state laws from our Court of Appeals:

> We think it is incorrect to use the term "false conflict" to describe the situation where the laws of two states do not differ. If two jurisdictions' laws are the same, then there is no *conflict* at all, and a choice of law analysis is unnecessary. Thus, the first part of the choice of law inquiry is best understood as determining if there is an *actual* or real conflict between the potentially applicable laws.

Hammersmith v. TIG Ins. Co., 480 F.3d 220, 230 (3d Cir. 2007) (emphasis in original).

[4] While we subscribe to Professor Larry Kramer's thesis that there is no such thing as an unprovided for case in government interest analyses, see The Myth of the "Unprovided-For" Case, 75 VA. L. REV. 1045 (1989), our Court of Appeals disagrees. Budget Rent-A-Car Sys., Inc. v. Chappell, 407 F.3d 166, 170 (3d Cir. 2005) ("an unprovided-for case arises when no jurisdiction's interests would be impaired if its laws were not applied.").

1069, 1071 (3d Cir. 1996) (citing <u>Lacey v. Cessna Aircraft Co.</u>, 932 F.2d 170, 187 (3d Cir.

1991).  When a false conflict exists, courts apply the law of the only interested jurisdiction.  <u>See</u>

<u>Garcia v. Plaza Oldsmobile Ltd.</u>, 421 F.3d 216, 220 (3d Cir. 2005).  A case is considered to be

unprovided for "when no jurisdiction's interests would be impaired if its laws were not applied."

<u>Budget Rent-A-Car Sys., Inc. v. Chappell</u>, 407 F.3d 166, 170 (3d Cir. 2005).  In unprovided for

tort cases, we use the <u>lex</u> <u>loci</u> <u>delicti</u>, or place of the wrong rule, and apply the law of the state

where the harm occurred. <u>Id</u>.[5]

 A true conflict occurs when "<u>both</u> jurisdictions' interests would be impaired by the

application of the other's laws." <u>Hammersmith</u>, 480 F.3d at 230 (emphasis in original).  When a

true conflict exists, a court must decide which state has the "greater interest in the application of

its law." <u>Cipolla v. Shaposka</u>, 267 A.2d 854, 856 (Pa. 1970).  Pennsylvania courts do this by

considering the factors from the Second Restatement of Conflict of Laws, which are:

> (a) the needs of the interstate and international systems, (b) the
> relevant policies of the forum, (c) the relevant policies of other
> interested states and the relative interests of those states in the
> determination of the particular issue, (d) the protection of justified
> expectations, (e) the basic policies underlying the particular field
> of law, (f) certainty, predictability and uniformity of result, and (g)
> ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6; <u>see</u> <u>Budget Rent-A-Car</u>, 407 F.3d at 170.

 We now analyze each of Broederdorf's four remaining claims to determine which state's

law should govern each claim.  Broederdorf brings a claim against Bacheler for conversion.  In

Pennsylvania, conversion is a strict liability offense, <u>Fort Washington Resources, Inc. v. Tannen</u>,

846 F. Supp. 354, 362 (E.D. Pa 1994), and "is a tort by which the defendant deprives the plaintiff

---

[5] Pennsylvania courts have not yet determined which law to apply in unprovided for contract cases.  <u>See</u> <u>McDonald v. Whitewater Challengers, Inc.</u>, 116 A.3d 99, 107 (Pa. Super. Ct. 2015) ("We leave for another day a determination of which state's law applies in an 'unprovided-for conflict' in contract cases.").

of his right to a chattel or interferes with the plaintiff's use of possession of a chattel without…consent and…justification." Pittsburgh Const. Co. v. Griffith, 834 A.2d 572, 581 (Pa. Super. Ct. 2003).  A plaintiff has a cause of action in conversion when he "had actual or constructive possession of a chattel or an immediate right to possession of a chattel at the time of the alleged conversion."  Chrysler Credit Corp. v. Smith, 643 A.2d 1098, 1100 (Pa. Super. Ct. 1994).  While money can be the subject of a tort of conversion, the failure to pay a debt is not conversion.  Francis J. Bernhardt, III, P.C. v. Needleman, 705 A.2d 875, 878 (Pa. Super. Ct. 1997).

Florida law provides that conversion is an intentional tort which requires proof of intent, Curd v. Mosaic Fertilizer, LLC, 39 So.3d 1216, 1223 (Fla. 2010), and "is defined as an (1) act of dominion wrongfully asserted; (2) over another's property; and (3) inconsistent with an ownership therein." Ingle v. Janick, No. 2:14-cv-544, 2014 WL 6476223, at *2 (M.D. Fla. 2014). To establish a conversion claim for money under Florida law, a plaintiff must show "(1) specific and identifiable money; (2) possession or an immediate right to possess that money; (3) an unauthorized act which deprives plaintiff of that money; and (4) a demand for return of the money and a refusal to do so."  U.S. v. Bailey, 288 F. Supp. 2d 1261, 1264 (M.D. Fla. 2003).

Here, we find it likely that Broederdorf would prefer to have the law of the state where he is domiciled, Florida, apply to his conversion claim, given the fact that in that state a conversion claim for money only requires that he show that he had "an immediate right to possess that money."  Bacheler, on the other hand, would likely prefer to have the law of the Commonwealth of his domicile, Pennsylvania, applied, since a conversion claim under Pennsylvania law requires that the plaintiff have "actual or constructive" possession of the chattel at the time of conversion. Therefore, the interests of both states are implicated and we have a true conflict.

We now must determine which state has the "most significant relationship" to this conversion claim by considering the factors listed in Section 6 of the Restatement (Second) of Conflict of Laws.  The needs of the interstate and international systems do not seem to be implicated here.  Both the forum state, Pennsylvania, and the competing state, Florida, appear to have similar interests in this case.  Each state likely wants their laws applied to protect the expectations of those domiciles.  We must next consider the justified expectations of the parties. Bacheler is a Pennsylvania domiciliary being sued in the Commonwealth of Pennsylvania, and thus has a justified expectation that Pennsylvania law should apply.  Broederdorf has sued Bacheler in Pennsylvania for the tort of conversion[6] that occurred based on Bacheler's alleged wrongdoing in Pennsylvania, and therefore could not justifiably expect Florida law to be applied. The basic policies underlying the field of tort law and the certainty, predictability, and uniformity of result do not seem to be implicated.  Finally, ease in the determination and application of the law to be applied seems to point to Pennsylvania.  Given that the parties should justifiably expect that Pennsylvania law would apply to a tort claim where the alleged misconduct took place in Pennsylvania and the defendant is domiciled in Pennsylvania, we find that Pennsylvania has the most significant relationship to the claim of conversion and thus we will apply Pennsylvania law on conversion.

Broederdorf also alleges a fraud in the inducement claim.  Florida's and Pennsylvania's laws on this topic have no relevant differences, as each requires plaintiffs to prove nearly identical elements to sustain such a claim.[7]  Thus, there is no conflict and the law of the forum

---

[6] Since conversion is a tort claim, it is unconnected to the alleged contract formed in this case in the Original and Amended Agreements.

[7] Pennsylvania requires plaintiffs to prove the following elements for a fraud in the inducement claim: (1) a representation; (2) material to the transaction at hand; (3) made falsely with knowledge of its falsity or recklessness as to its truth; (4) with intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) resulting injury.  See

state, Pennsylvania, applies.  Broederdorf further asserts a claim of unjust enrichment, which similarly has nearly identical elements under both Florida and Pennsylvania law.[8]  Therefore we find that there is no conflict and we will apply Pennsylvania law. Finally, the common law doctrine of equitable estoppel in Florida and Pennsylvania is almost indistinguishable, and thus there is no conflict[9] and so we apply the law of the forum state, Pennsylvania.

We therefore find that Florida law governs Broederdorf's claims for breach of contract, breach of contract-third party beneficiary, breach of implied covenant of good faith, and breach of fiduciary duty, while Pennsylvania law applies to his conversion, fraud, unjust enrichment, and equitable estoppel claims.

### B.    Causes of Action

Broederdorf's complaint asserts eight causes of action: (1) breach of contract; (2) breach of contract-third party beneficiary; (3) breach of implied covenant of good faith and fair dealing; (4) breach of fiduciary duty; (5) conversion; (6) fraud in the inducement; (7) unjust enrichment;

---

Freeman v. Pittsburgh Glass Works, LLC, 709 F.3d 240, 256-57 (3d Cir. 2013) (quoting EBC, Inc. v. Clark Bldg. Sys., 618 F.3d 253, 275 (3d Cir. 2010)).  In Florida, the elements for a fraud in the inducement claim are that: (1) the defendant misrepresented a material fact; (2) the defendant knew or should have known that the statement was false; (3) the defendant intended that the representation would induce the plaintiff to enter into a contract or business relation; and (4) the plaintiff was injured by acting in justifiable reliance on the misrepresentation.  See Barnes v. Burger King Corp., 932 F. Supp. 1420, 1425 (S.D. Fla. 1996) (citing Johnson v. Davis, 480 So.2d 625,627 (Fla. 1985)).

[8] Both Pennsylvania and Florida require plaintiffs to prove the following elements for unjust enrichment claims: (1) plaintiff conferred benefits upon defendant; (2) defendant realized or appreciated those benefits; (3) defendant accepted or retained the benefits; and (4) the circumstances make it that retaining those benefits without payment of value would be inequitable.  See EBC, Inc., 618 F.3d at 273 and Hillman Const. Corp. v. Wainer, 636 So.2d 576, 577 (Fla. Dist. Ct. App. 1994).

[9] See Florida Dept. of Health and Rehabilitative Services v. S.A.P., 835 So.2d 1091, 1096-97 (Fla. 2002) ("Equitable estoppel is based on principles of fair play and essential justice and arises when one party lulls another party into a disadvantageous legal position."); Novelty Knitting Mills, Inc. v. Siskind, 457 A.2d 502, 503 (Pa. 1983) ("Equitable estoppel is a doctrine that prevents one from doing an act differently than the manner in which another was induced by word or deed to expect.").

and (8) equitable estoppel.  We separately analyze each claim to determine whether it survives Bacheler's motion to dismiss.

### 1.   Breach of Contract

Broederdorf first brings a breach of contract claim against Bacheler on behalf of descendant Bosich.  To succeed in a breach of contract claim under Florida law, a plaintiff must establish that there was: (1) a valid contract; (2) a material breach of that contract; and (3) damages.  Murciano v. Garcia, 958 So.2d 423 (Fla. Dist. Ct. App. 2007) (citing Abbott Labs., Inc. v. Gen. Elec. Capital, 765 So.2d 737, 740 (Fla. Dist. Ct. App. 2000)).  The elements necessary for the creation of an enforceable contract are an offer, acceptance of that offer, and consideration. Air Products and Chemicals, Inc. v. Louisiana Land and Exploration Co., 806 F.2d 1524, 1529 (11th Cir. 1994).  A material breach under Florida law occurs when a party's nonperformance goes to "the essence of the contract."  MDS (Canada) Inc. v. Rad Source Technologies, Inc., 720 F.3d 833, 849 (11th Cir. 2013).

Here, Broederdorf has pled that Bosich offered Bacheler the opportunity to take out a life insurance policy on her in order to assist Bacheler in purchasing FNI upon Bosich's death, and has further presented evidence of that offer in the form of the Original Agreement.  Compl. at ¶¶ 23-24 and Ex. A.  Bacheler accepted that offer when he signed the "Joinder and Consent" page of the Original Agreement, id. Ex. A, and when he paid the advance premium and all subsequent premiums on the life insurance policy.  Id. at ¶¶ 31, 36.  Further, Bacheler accepted Bosich's offer of amended terms when he signed the "Joinder and Consent" page of the Amended Agreement. Id. Ex. C.  There was consideration as Bacheler received the right to use funds from the life insurance policy on Bosich towards the purchase of FNI, while Bosich's Estate would receive the $1,000,000 from the policy.  Id. at ¶¶ 23-24 and Ex. A.  Bacheler's alleged breach is

material since he is keeping the money at the heart of the Agreement which the Estate claims as its own.  The damages are the $1,000,000 paid out pursuant to the policy on Bosich's life that the Estate has been denied.  Broederdorf has therefore pled facts sufficient to support a plausible claim for relief under a breach of contract action.

      We will therefore deny Bacheler's motion to dismiss Broederdorf's breach of contract claim.

### 2.      <u>Breach of Contract – Third Party Beneficiary</u>

      Broederdorf next brings a breach of contract – third party beneficiary claim against Bacheler on behalf of the Estate.  To prove a breach of contract claim as a third party beneficiary, a plaintiff must allege: (1) the existence of a contract; (2) the clear or manifest intent of the contracting parties that the contract primarily and directly benefit the third party; (3) breach of the contract; and (4) damages to the third party.  <u>Foundation Health v. Westside EKG Associates</u>, 944 So.2d 188, 195 (Fla. 2006).  As we have discussed, Broederdorf has pled facts sufficient to show that a contract existed, Bacheler breached said contract, and Broederdorf suffered damages as a result.  We also find that Broederdorf has pled facts sufficient to establish that the parties intended to have the life insurance policy benefit the Estate as it was named the primary beneficiary before Bacheler made himself the primary beneficiary in 2014.  Compl. Ex. B and Compl. at ¶ 38.  Broederdorf has therefore pled facts sufficient to support a plausible claim for relief under a third party breach of contract action.

      We will therefore deny Bacheler's motion to dismiss Broederdorf's third-party breach of contract claim.

### 3.      Breach of the Implied Covenant of Good Faith and Fair Dealing

Broederdorf also brings a claim against Bacheler for breach of the implied covenant of good faith and fair dealing.  Florida law "recognizes the implied covenant of good faith and fair dealing in every contract."  Barnes v. Burger King Corp., 932 F. Supp.1420, 1438 (S.D. Fla. 1996).  Florida law further recognizes a breach of this implied covenant as an independent cause of action.  See Scheck v. Burger King Corp., 798 F. Supp. 692 (S.D. Fla. 1992).  The implied covenant "imposes upon each party the duty to do nothing destructive of the other party's right to enjoy the fruits of the contract and to do everything that the contract presupposes they will do to accomplish its purpose." Id. at 694 (quoting Conoco, Inc. v. Inman Oil Co. Inc., 774 F.2d 895, 908 (8th Cir. 1985)).  But, the implied covenant of good faith and fair dealing "is not actionable absent a breach of the contract's express terms," Burger King Corp. v. Holder, 844 F. Supp. 1528, 1530 (S.D. Fla. 1993), nor can it be pursued where its application would contradict the express terms of the agreement.  Barnes, 932 F. Supp at 1438.

Here, Broederdorf has pled sufficient facts to plausibly state a claim for Bacheler's alleged breach of the implied covenant of good faith and fair dealing.  Bacheler had a duty under the Original and Amended Agreements to use the life insurance policy as a means to help him purchase FNI or, if he did not do so, give the proceeds of the policy to the Estate.  Broederdorf and the Estate had a reasonable expectation that this would happen.  Compl. Exs. A and C. Bacheler's actions were a breach of the contract's express terms and did not contradict terms in either the Original or Amended Agreements.

We will therefore deny Bacheler's motion to dismiss Broederdorf's claim for breach of the implied covenant of good faith and fair dealing.

17

### 4. __Breach of Fiduciary Duty__

Broederdorf further brings a claim for breach of fiduciary duty against Bacheler.  Florida courts recognize a cause of action for breach of fiduciary duty.  <u>Atlantic Nat'l Bank v. Vest</u>, 480 So.2d 1328 (Fla. Dist. Ct. App. 1985). Florida law has described a fiduciary relationship by stating that it "need not be legal," and that if "a relation of trust and confidence exists between the parties…where confidence has been acquired and abused…that is sufficient as a predicate for relief." <u>Doe v. Evans</u>, 814 So.2d 370, 374 (Fla. 2002) (quoting <u>Quinn v. Phipps</u>, 113 So. 419, 421 (Fla. 1927)).  A fiduciary relationship may be implied by law and can be inferred through an examination of the "specific factual situation surrounding the transaction and the relationship of the parties." <u>Id.</u> (quoting <u>Capital Bank v. MVB, Inc.</u>, 644 So.2d 515, 518 (Fla. Dist. Ct. App. 1994)).

Here, Bosich and, through the Agreement's terms, her Estate entered into a "relation[ship] of trust and confidence" with Bacheler when they agreed that he could use proceeds from a life insurance policy on Bosich to aid in the purchase of FNI.  Compl. Exs. A and B.  Bacheler abused the trust placed in him by changing the primary beneficiary of the policy from the Estate to himself.  Compl. Ex. D and ¶¶ 38-43.  Broederdorf therefore pled sufficient facts to plausibly state a claim for relief against Bacheler under an action for breach of fiduciary duty.

We will therefore deny Bacheler's motion to dismiss Broederdorf's breach of fiduciary duty claim.

### 5. __Conversion__

Broederdorf brings a claim for the tort of conversion against Bacheler.  Under Pennsylvania law, conversion occurs when a defendant denies a plaintiff of his right to chattel or interferes with his use or possession of said chattel without consent or legal justification.

Pittsburgh Const. Co., 834 A.2d at 581.  A plaintiff has a cause of action in conversion when he "had actual or constructive possession of a chattel or an immediate right to possession of a chattel at the time of the alleged conversion."  Chrysler Credit Corp. v. Smith, 643 A.2d 1098, 1100 (Pa. Super. Ct. 1994).  While money can be the subject of a tort of conversion, the failure to pay a debt is not conversion.  Francis J. Bernhardt, III, P.C. v. Needleman, 705 A.2d 875, 878 (Pa. Super. Ct. 1997).

Here, Broederdorf pled that the Estate had a right to the insurance proceeds from the policy on Bosich's life pursuant to the Original and Amended Agreements.  Compl. Exs. A and C.  He further alleges that Bacheler denied the Estate of this right when he made himself the primary beneficiary of the policy.  Id. Ex. D and ¶¶ 38-43.  Finally, the Estate had actual or constructive possession of the right to the proceeds when it was the primary beneficiary under the life insurance policy on Bosich.  See id. Ex. B. Broederdorf has thus pled sufficient facts to plausibly state a claim for relief under the tort of conversion.[10]

We will therefore deny Bacheler's motion to dismiss Broederdorf's conversion claim.

### 6.    Fraud in the Inducement

Broederdorf next asserts a claim against Bacheler for fraud in the inducement. Pennsylvania law requires plaintiffs to prove the following elements in a claim for fraud in the inducement: (1) a representation; (2) material to the transaction at hand; (3) made falsely with knowledge of its falsity or recklessness as to its truth; (4) with intent of misleading another into

---

[10] Bacheler spends much of his memorandum in support of this motion to dismiss discussing the "gist of the action" and "economic loss" doctrines.  These arguments are wholly inappropriate for this stage of litigation.  Broederdorf is entitled to state alternative claims in his pleadings pursuant to Fed. R. Civ. P. 8(d)(2) and (3).  Our Court of Appeals has interpreted this rule to mean that "a court 'may not construe [a plaintiff's] first claim as an admission against another alternative or inconsistent claim.'"  Independent Enterp., Inc. v. Pittsburgh Water & Sewer Auth., 103 F.3d 1165, 1175 (3d Cir. 1997) (quoting Molsbergen v. U.S., 757 F.2d 1016, 1019 (9th Cir. 1985)).

relying on it; (5) justifiable reliance on the misrepresentation; and (6) resulting injury. <u>See</u> <u>Freeman v. Pittsburgh Glass Works, LLC</u>, 709 F.3d 240, 256-57 (3d Cir. 2013) (quoting <u>EBC,</u> <u>Inc. v. Clark Bldg. Sys.</u>, 618 F.3d 253, 275 (3d Cir. 2010)).

Here, Broederdorf has pled facts sufficient to support each of these elements and thus plausibly state a claim upon which relief can be granted.[11]  The language of the Original and Amended Agreements supports Broederdorf's claim that Bacheler made a false representation that was material to the transaction when he agreed to pay for the insurance policy on Bosich's life in exchange for using the funds from that policy to help him purchase FNI from the Estate upon Bosich's death and then claimed the insurance proceeds for himself when the time came to either buy FNI or give the proceeds of the policy to the Estate less the premium payments he made. Compl. Exs. A and B.  Broederdorf also pled facts showing that Bosich and the Estate justifiably relied on the misrepresentation when entering into the Agreement, since Bosich would not have entered into the Agreement had she known Bacheler would attempt to keep the funds himself. <u>Id.</u> at ¶ 49.  The Estate suffered a resulting injury when it was denied access to the $1 million in life insurance proceeds.  Finally, Bacheler's intent to mislead can be inferred by him changing the primary beneficiary on the Bosich life insurance policy from the Estate to himself just days before Bosich's untimely death.  <u>Id.</u> Ex. D.

We will therefore deny Bacheler's motion to dismiss Broederdorf's fraud in the inducement claim.

---

[11] Bacheler claims that Broederdorf has not met the heightened pleading standards required for fraud claims under Fed. R. Civ. P. 9(b) which states that "a party must state with particularity the circumstances constituting fraud or mistake."  Bacheler contends Broederdorf did not state the place or time of the circumstances and thus failed to meet the standard required by Rule 9.  This is incorrect.  Broederdorf provided two agreements which Bacheler allegedly signed that are dated.  These Agreements provide the "who, what, when, and where" that Bacheler claims is missing from the complaint.

7.    **Unjust Enrichment**

Broederdorf also brings a claim against Bacheler for unjust enrichment.  Pennsylvania law states that unjust enrichment is an equitable doctrine applied only when the law implied a contract that requires the defendant to pay the value of the benefit conferred.  Mitchell v. Moore, 729 A.2d 1200, 1203-04 (Pa. Super. Ct. 1999) (citing Schenck v. K.E. David, Ltd., 666 A.2d 327, 328 (Pa. Super. Ct. 1995)).  The elements of an unjust enrichment claim are "(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value."  Id.

Here, Broederdorf pled facts showing that Bosich and the Estate conferred a benefit upon Bacheler by allowing him to use funds from a life insurance policy on Bosich's life to purchase FNI upon her death.  Compl. Ex. A.  Bacheler appreciated this benefit when he was given the option to buy FNI after Bosich's untimely death using the proceeds from the insurance policy.  Id. at  ¶ 40.  Taking Broederdorf's allegation that the Agreement was never meant to allow Bacheler personally to take the proceeds from the insurance policy as true, it would be inequitable for Bacheler to receive ownership of the $1 million paid out on the policy when Bosich died.

We will therefore deny Bacheler's motion to dismiss Broederdorf's unjust enrichment claim.

8.    **Equitable Estoppel**

Finally, Broederdorf brings a claim against Bacheler under the theory of equitable estoppel.  Pennsylvania law does not recognize equitable estoppel as an independent cause of action.  See Carlson v. Arnot-Ogden Mem'l Hosp., 918 F.2d 411, 416 (3d Cir. 1990).

Broederdorf tries to argue that what he was really asserting in his complaint was a promissory estoppel claim, which is recognized under Pennsylvania law.  Pl.'s Mem. Opp'n Def.'s Mot. to Dismiss at 27-29.   Our Court of Appeals, however, has made it clear that we do not consider after-the-fact allegations to determine the sufficiency of a complaint under Rule 12(b)(6).  See Frederico v. Home Depot, 507 F.3d 188, 201 (3d Cir. 2007).  We will therefore dismiss without prejudice Broederdorf's equitable estoppel claim.

But we must decide whether to grant leave to Broederdorf to amend his complaint to assert a claim for promissory estoppel.  Fed. R. Civ. P. 15(a)(2) provides that when a party can no longer amend its pleadings as a matter of course, it can only amend its pleadings with the court's leave or the opposing party's written consent.  It further states that "[t]he court should freely give leave when justice so requires."  Id.  Courts should grant leave to amend pleadings in the absence of reasons such as undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice, and futility of amendment.  See Foman v. Davis, 371 U.S. 178, 182 (1962) (stating that leave to amend should be denied only when there is a justifiable reason).  While we are not obliged to grant Broederdorf leave to amend sua sponte, Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251-52 (3d Cir. 2007), we have discretion to do so when, as Rule 15 states, justice so requires.

No justifiable reason exists for us not to grant Broederdorf leave to submit an amended complaint.  Granting Broederdorf leave to amend will not cause undue delay, as he will have only ten days to submit an amended complaint.  Amending the complaint will allow Broederdorf to pursue a remedy stemming from the same alleged misconduct on the part of Bacheler through a promissory estoppel claim.  Finally, Bacheler is not unduly prejudiced by granting Broederdorf

leave to amend, as he will have a full and fair opportunity to respond to the allegations made against him.

We will therefore grant Broederdorf leave to amend his complaint, should he choose to do so, within ten days of the accompanying Order.

### C.   <u>Punitive Damages</u>

Broederdorf further claims that he is entitled to punitive damages, and Bacheler moves to dismiss any claim for punitive damages made by Broederdorf in his complaint.  Punitive damages are allowed under Pennsylvania law in claims of fraud[12] and conversion,[13] and under Florida law for breach of fiduciary duty claims.[14]  We have refused to dismiss Broederdorf's fraud, conversion, and breach of fiduciary duty claims, so the imposition of punitive damages is still possible.

We will therefore deny Bacheler's motion to dismiss Broederdorf's claims for punitive damages.

### IV.   <u>Conclusion</u>

Broederdorf has plausibly stated claims for which relief can be granted in his breach of contract, breach of contract-third party beneficiary, breach of implied covenant of good faith and fair dealing, breach of fiduciary duty, conversion, fraud in the inducement, and unjust enrichment claims.  He has failed to state a claim upon which relief can be granted in his

---

[12] See <u>Delahanty v. First Pennsylvania Bank, N.A.</u>, 464 A.2d 1243, 1265 (Pa. Super. Ct. 1983) (awarding punitive damages to the plaintiff after finding that the defendant committed fraud).

[13] See <u>Francis J. Bernhardt, III, P.C. v. Needleman</u>, 705 A.2d 875, 879 (Pa. Super. Ct. 1997) (stating that a finding of liability on a conversion claim can enable the award of punitive damages).

[14] See <u>Comfort Makers, Inc. v. Estate of Kenton</u>, 515 So.2d 1384, 1386 (Fla. Dist. Ct. App. 1987) ("[a]lthough punitive damages are recoverable in a case involving breach of fiduciary duties, there is no absolute right to such an award.").

equitable estoppel claim.  But we will grant him leave to amend his complaint within ten days to rectify this defect.

We will therefore grant in part and deny in part Bacheler's motion to dismiss and grant plaintiff leave to file an amended complaint within ten days.  An appropriate Order follows.

BY THE COURT:


  /s/ Stewart Dalzell, J.
Stewart Dalzell, J.